**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WINNIFRED ARMSTRONG, Derivatively on Behalf of Nominal Defendant GRAPHIC PACKAGING HOLDING COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL P. DOSS, STEPHEN R. SCHERGER, AZIZ AGHILI, LAURIE BRLAS, ANDREW P. CALLAHAN, ROBERT A. HAGEMANN, PHILIP R. MARTENS, ALESSANDRO MASELLI, MARY K. RHINEHART, ROBERT E. RIETBROEK, DEAN A. SCARBOROUGH, LARRY M. VENTURELLI, and LYNN A. WENTWORTH,<br><br>Defendants,<br><br>and<br><br>GRAPHIC PACKAGING HOLDING COMPANY,<br><br>Nominal Defendant. | Case No. ______________<br><br>JURY TRIAL DEMANDED |

# VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Winnifred Armstrong ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Graphic Packaging Holding Company ("Graphic Packaging" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) breaches of fiduciary duties and violations of federal law. Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding Graphic Packaging, legal filings, news reports, securities analysts' reports about the Company, filings in the securities class action captioned *Thurber v. Graphic Packaging Holding Company, et al.*, Case No. 1:26-cv-03790-JAV (S.D.N.Y.) (the "Securities Class Action"), and other publicly available information.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought by Plaintiff on behalf of Graphic Packaging against certain of its current and former officers and members of the Company's Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least February 4, 2025 and February 2, 2026, inclusive (the "Relevant Period"), and violations of federal securities laws, as set forth below.

2. Graphic Packaging is a consumer packaging company that, together with its subsidiaries, designs, produces, and sells consumer packaging containers. Graphic Packaging operates across twenty countries worldwide, serving a variety of consumer markets including food and beverage, foodservice, household products, beauty, and healthcare.

3. Graphic Packaging sells the bulk of its products to multinational consumer product companies including, but not limited to, Anheuser-Busch Inbev, The Kraft Heinz Company, Nestlé

[1] The Individual Defendants are Michael P. Doss ("Doss"), Stephen R. Scherger ("Scherger"), Aziz Aghili ("Aghili"), Lauri Brlas ("Brlas"), Andrew P. Callahan ("Callahan"), Robert A. Hagemann ("Hagemann"), Philip R. Martens ("Martens"), Alessandro Maselli ("Maselli"), Mary K. Rhinehart ("Rhinehart"), Robbert E. Rietbroek ("Rietbroek"), Dean A. Scarborough ("Scarborough"), Larry M. Venturelli ("Venturelli"), and Lynn A. Wentworth ("Wentworth"). "Defendants" means Graphic Packaging and the Individual Defendants.

USA, Inc., Chick-fil-A, McDonald's, Panda Express, Johnson & Johnson, L'Oréal S.A., and Colgate-Palmolive. Graphic Packaging products are sold through both the Company's own sales offices located across twelve countries and through broker arrangements with third parties.

4. Graphic Packaging's financial performance and ability to meet financial guidance depends on the Company's ability to properly adjust inventory levels and align them with its customers' demand. Prior to the Relevant Period, the Company increased its inventory above normal levels as its customers began well-publicized "destocking" efforts (i.e., diminishing their own inventories) following COVID-19 pandemic-era excess procurement. Around this time, as customer demand declined, Graphic Packaging's net sales declined. Defendant Doss represented during this period, and up to the Relevant Period, that this demand imbalance was a short-term problem that the Company was actively managing. Nevertheless, by the end of 2024, the Company was experiencing weakening demand across multiple end markets and pressures from inflation and reduced consumer spending on the Company's customers' products.

5. Throughout the Relevant Period, the Company emphasized to investors and the public that its business model and operations were both stable and strong. The Company touted its ability to deliver on its cost and inventory reduction, its free cash flow ("FCF"), and its profitability goals despite the significant ongoing market headwinds challenging the Company's and its customers' businesses. For example, on February 4, 2025, the Company issued a press release announcing its fourth quarter and full year results for fiscal year 2024 (the "4Q24 Press Release"). In the 4Q24 Press Release, Defendant Doss was quoted as acknowledging the "unusual volume challenges for the industry and our customers" over the past two years. However, despite these known headwinds, the Company forecasted full year 2025 net sales, adjusted EBITDA, and adjusted earnings per share ("EPS") of $8.7 to $8.9 billion, $1.68 to $1.78 billion, and $2.53 to

$2.78, respectively.

6. The truth began to emerge on May 1, 2025, when the Company issued a press release announcing its first quarter results for fiscal year 2025 (the "1Q25 Press Release"). In the 1Q25 Press Release, the Company reported that it had missed its first quarter non-GAAP EPS consensus estimates by $0.07, and that it had missed its revenue consensus estimates by $10 million, representing a 6.2% year-over-year decline. The 1Q25 Press Release further revealed that the Company had negatively revised its full year 2025 net sales outlook, its adjusted EBITDA outlook, and its adjusted EPS outlook. The Company blamed the revision on "an expectation of a 2% volume decline and $80 million of input cost inflation at the midpoint," in addition to "higher macroeconomic and consumer spending uncertainty."

7. On this news, the Company's stock price fell $3.94 per share, or approximately 16%, from a closing price of $25.31 per share on April 30, 2025, to a closing price of $21.37 per share on May 1, 2025.

8. Nevertheless, despite these partial corrective disclosures, the Company and its representatives continued to downplay the true scope and severity of the issues facing the Company and overstated the strength and ability of the Company's business model and operations to overcome these substantial macroeconomic headwinds. Moreover, the Company failed to disclose that it faced major inventory management issues and reduced demand, which further exacerbated the issues already affecting the Company.

9. The truth finally fully emerged on February 3, 2026, when the Company issued a press release announcing its fourth quarter and full year results for fiscal year 2025 (the "4Q25 Press Release"). In the 4Q25 Press Release, Graphic Packaging reported that it missed its fourth quarter non-GAAP EPS consensus estimates by $0.06, among other disappointing results. The

Company further projected a decline in adjusted EBITDA in 2026, referencing "a $130 million negative impact from actions taken to reduce inventory and generate [FCF], an approximately $100 million accrual (non-cash in 2026) for a return to more normal incentive compensation, January weather and production impacts, and other largely offsetting operating items."

10. The 4Q25 Press Release also quoted the Company's new President and Chief Executive Officer ("CEO") Defendant Rietbroek, who stated that he had "initiated a comprehensive review of our organization structure, operations, and footprint, and a selective review of our portfolio to ensure that our resources are focused where we can create the greatest value for our shareholders."

11. On this news, the Company's stock price fell $2.36, or approximately 16%, from a closing price of $14.78 per share on February 2, 2026, to a closing price of $12.42 per share on February 3, 2026.

12. As set forth herein, the Individual Defendants breached their fiduciary duties by issuing, causing the issuance of, and/or failing to correct the materially false and/or misleading statements and omissions of material fact to the investing public. Specifically, the Individual Defendants failed to disclose to investors, *inter alia*, that: (i) the Company's business model and operations were not as strong or sustainable as was stated; (ii) the Company, its business model, and its operations were unable to weather the ongoing macroeconomic headwinds affecting the Company; (iii) the Company was experiencing significant inventory management issues; (iv) Graphic Packaging experienced significantly reduced demand and volumes as well as increased costs throughout the Relevant Period; (v) accordingly, the Company's full year 2025 financial guidance was unreliable and/or unrealistic; (vi) the Company failed to maintain adequate internal controls and risk oversight mechanisms; and (vii) as a result of the foregoing, the Company's

public statements regarding its business, operations, and prospects were materially false and misleading and lacked a reasonable basis.

13. As a result of the foregoing, the Securities Class Action was filed against the Company and Defendants Doss and Scherger in the United States District Court for the Southern District of New York.

14. As a direct and proximate result of the Individual Defendants' misconduct, the Company has incurred significant financial losses, including the cost of defending and paying class-wide damages in the Securities Class Action, as well as additional losses including reputational harm and loss of goodwill.

15. Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants' liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Graphic Packaging's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence. Accordingly, Plaintiff did not make a demand on the Board because, as further detailed herein, demand would be a futile and useless act.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims asserted herein for violations of Section 14(a) of the Exchange Act (15 U.S.C. § 78n(a)) and Rule 14a-9 (17 C.F.R. § 240.14a-9) promulgated thereunder by the SEC, Section 10(b) of the

Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder by the SEC, Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)).

17. Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

18. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

20. In connection with the acts, conduct and other wrongs complained of herein, the Individual Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

21. Venue is proper in this District pursuant to Section 27(a) of the Exchange Act and 28 U.S.C. § 1391 because Defendants conduct business in this District, a substantial portion of the acts and omissions alleged herein, including the dissemination of materially false and misleading information, occurred in this District, Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District, and the Securities Class Action is pending in this District.

## PARTIES

***Plaintiff***

22. Plaintiff is, and has been at all relevant times, a continuous shareholder of Graphic Packaging.

***Nominal Defendant***

23. Nominal Defendant Graphic Packaging is a Delaware corporation with its principal

executive offices located at 1500 Riveredge Parkway, Atlanta, Georgia 30328. Graphic Packaging's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "GPK."

***Individual Defendants***

24. Defendant Doss served as a director of the Company from May 2015 until January 2026, and served as the Company's President and CEO from January 2016 until January 2026. Defendant Doss is named as a defendant in the Securities Class Action. According to the Company's proxy statement filed on April 28, 2026, on Schedule 14A with the SEC (the "2026 Proxy"), Defendant Doss received $9,104,747 in total compensation from the Company in 2025.

25. Defendant Scherger served as the Company's Executive Vice President ("EVP") and Chief Financial Officer ("CFO") from January 2015 until November 2025. Defendant Scherger is named as a defendant in the Securities Class Action. According to the 2026 Proxy, Defendant Scherger received $2,831,752 in total compensation from the Company in 2025.

26. Defendant Aghili has served as a director of the Company since March 2022. Defendant Aghili also serves on the Company's Compensation and Management Development Committee (the "Compensation Committee") and Audit Committee. According to the 2026 Proxy, Defendant Aghili received $280,012 in total compensation from the Company in 2025.

27. Defendant Brlas has served as a director of the Company since January 2019. Defendant Brlas also serves as a member of the Audit Committee and Nominating and Corporate Governance Committee ("Nominating Committee"). According to the 2026 Proxy, Defendant Brlas received $280,012 in total compensation from the Company in 2025.

28. Defendant Callahan has served as a director of the Company since July 2024. Defendant Callahan also serves as Chair of the Company's Nominating Committee and as a

member of the Company's Compensation Committee. According to the 2026 Proxy, Defendant Callahan received $280,012 in total compensation from the Company in 2025.

29. Defendant Hagemann has served as a director of the Company since May 2014. Defendant Hagemann also serves as Chair of the Company's Audit Committee and as a member of the Company's Nominating Committee. According to the 2026 Proxy, Defendant Hagemann received $280,012 in total compensation from the Company in 2025.

30. Defendant Martens served as Chairman of the Company's Board from May 2016 until June 2026. During his time with the Company, Defendant Martens also served as Chair of the Company's Nominating Committee. According to the 2026 Proxy, Defendant Martens received $430,012 in total compensation from the Company in 2025.

31. Defendant Maselli has served as a director of the Company since May 2025. Defendant Maselli also serves as a member of the Company's Compensation Committee. According to the 2026 Proxy, Defendant Maselli received $233,492 in total compensation from the Company in 2025.

32. Defendant Rhinehart served as a director of the Company from February 2021 until May 2025. During her time with the Company, Defendant Rhinehart also served as a member of the Company's Audit Committee and Compensation Committee. According to the 2026 Proxy, Defendant Rhinehart received $46,439 in total compensation from the Company in 2025.

33. Defendant Rietbroek has served as a director of the Company and the Company's President and CEO since January 2026.

34. Defendant Scarborough served as a director of the Company from July 2018 until August 2025. During his time with the Company, Defendant Scarborough also served as a member of the Company's Audit Committee and Compensation Committee. According to the 2026 Proxy,

Defendant Scarborough received $232,176 in total compensation from the Company in 2025.

35. Defendant Venturelli has served as a director of the Company since May 2016 and as Chairman of the Board since June 2026. According to the 2026 Proxy, Defendant Venturelli received $305,012 in total compensation from the Company in 2025.

36. Defendant Wentworth has served as a director of the Company since November 2009. Defendant Wentworth also serves as Chair of the Company's Compensation Committee and as a member of the Company's Nominating Committee. According to the 2026 Proxy, Defendant Wentworth received $305,012 in total compensation from the Company in 2025.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

37. By reason of their positions as officers and/or directors of Graphic Packaging, and because of their ability to control the business and corporate affairs of Graphic Packaging, the Individual Defendants owed Graphic Packaging and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Graphic Packaging in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Graphic Packaging and its shareholders.

38. Each director and officer of the Company owes to Graphic Packaging and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

39. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Graphic Packaging, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

40. To discharge their duties, the officers and directors of Graphic Packaging were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

41. Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Graphic Packaging, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

42. As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

43. To discharge their duties, the officers and directors of Graphic Packaging were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Graphic Packaging were required to, among other things:

(i) Ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Graphic Packaging's own Code of Conduct;

(ii) Conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(iii) Remain informed as to how Graphic Packaging conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(iv) Establish and maintain systematic and accurate records and reports of the business and internal affairs of Graphic Packaging and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(v) Maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Graphic Packaging's operations would comply with all applicable laws and Graphic Packaging's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(vi) Exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(vii) Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(viii) Examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

44. Each of the Individual Defendants further owed to Graphic Packaging and the shareholders the duty of loyalty requiring that each favor Graphic Packaging's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

45. At all times relevant hereto, the Individual Defendants were the agents of each other and of Graphic Packaging and were at all times acting within the course and scope of such agency.

46. Because of their advisory, executive, managerial, and directorial positions with Graphic Packaging, each of the Individual Defendants had access to adverse, non-public information about the Company.

47. The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Graphic Packaging.

## GRAPHIC PACKAGING'S CODE OF CONDUCT

48. The Company's Code of Conduct states that:

> This Code exists for everyone. It applies to every employee, officer, and director at Graphic Packaging and its subsidiaries worldwide. Together, we follow this Code – and insist that others follow it – by:
>
> - Acting in accordance with the law, our Core Values, and our policies.
> - Behaving in a way that reflects positively on the Company.
> - Avoiding any circumstance that may create – or even appear to create – a conflict of interest between ourselves and the Company.
> - Speaking up about ethical concerns and misconduct.
> - Pausing before you act and seeking guidance when you are unsure about the path forward.

49. Under a section titled "Complying With the Law," the Code of Conduct states, in relevant part:

> Following the law is non-negotiable. We comply with all applicable laws governing the work we do, and in some cases, go above and beyond. In cases where our policies are stricter than the law, follow the policy. Any time laws, local business practices, or customs conflict with our Code, do not try to resolve it on your own.

50. Under a section titled "Maintaining Accurate Records and Fraud," the Code of Conduct states, in relevant part:

> The integrity of our records is crucial to the ongoing health and success of our Company. Records guide our decisions and help us maintain the trust of our customers and stakeholders. The Company has zero-tolerance for fraud and corruption, including but not limited to forgery or alteration of documents, misrepresentation of information, and improprieties in the handling or reporting of money or financial transactions. When creating or handling records:
>
> - Always be accurate, clear, and complete.
> - Never falsify records or make misleading entries, and never let someone else pressure you into falsifying records – no one has that authority.
> - Follow all internal accounting controls and policies, as well as applicable laws and best practices.
> - Obtain proper authorization for transactions when necessary.
> - Report and correct errors immediately.
> - Refrain from maintaining "off the books" funds or assets.
> - Follow applicable data retention policies and laws for maintaining, storing, and disposing of records.

- Respond promptly to internal inquiries about financial records.
- Never destroy a record that has been requested as part of a lawsuit, investigation, or audit.
- Speak up immediately if you see or suspect anything suspicious.

51. Under a section titled "Preventing Insider Trading," the Code of Conduct states, in relevant part:

> In the course of your work, you may gain specific knowledge about Graphic Packaging and the companies we work with that would give you an unfair advantage when dealing in stocks and other securities. This knowledge is known as material, nonpublic information (MNPI), and using it to buy, sell, or gift stocks constitutes insider trading. Insider trading is a breach of trust and against the law. All employees and Company directors must abide by applicable insider trading laws.

52. Under a section titled "Avoiding Conflicts of Interest," the Code of Conduct states, in relevant part:

> We all have activities, interests, and relationships outside of Graphic Packaging. However, we must make sure these outside pursuits do not interfere with the jobs we do and the decisions we make while at work. We avoid conflicts of interest – or even the appearance of them – by:
>
> - Learning to recognize conflicts of interest.
> - Disclosing conflicts when they do arise.
> - Seeking guidance when we are unsure.

## GRAPHIC PACKAGING'S AUDIT COMMITTEE CHARTER

53. Graphic Packaging's Charter of the Audit Committee (the "Audit Committee Charter") states that the Audits Committee's purposes are:

> (a) to assist the Board in overseeing (i) the quality and integrity of the Corporation's financial statements, (ii) the qualifications and independence of the Corporation's currently-serving independent registered public accounting firm (referred to herein as the "Independent Auditors"), (iii) the performance of the Corporation's internal audit function and Internal Auditors and (iv) the Corporation's compliance with legal and regulatory requirements; and (b) to prepare the report of the Committee required to be included in the Corporation's annual proxy statement under the rules of the U.S. Securities and Exchange Commission (the "SEC").

54. Under a section titled "Duties and Responsibilities," the Audit Committee Charter states, in relevant part:

> (a) The Committee shall report regularly to the Board and review with the Board any issues that arise with respect to:
>
> (i) the quality or integrity of the Corporation's financial statements;
> (ii) the performance and independence of the Corporation's Independent Auditors;
> (iii) the performance of the Corporation's internal audit function; and
> (iv) the Corporation's compliance with legal and regulatory requirements. . . .
>
> (i) The Committee shall review and discuss with management and the Independent Auditors:
>
> (i) prior to the annual audit, the scope, planning and staffing of the annual audit;
>
> (ii) the Corporation's annual audited financial statements and quarterly financial statements, including the Corporation's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" and the results of the Independent Auditors' reviews of the quarterly financial statements;
>
> (iii) significant issues regarding accounting and auditing and practices and financial statement presentations, including all critical accounting policies and estimates, any significant changes in the Corporation's selection or application of accounting principles and any significant issues as to the adequacy of the Corporation's internal controls and any special audit steps adopted in light of material control deficiencies;
>
> (iv) analyses prepared by management and/or the Independent Auditors setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements;
>
> (v) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements;
>
> (vi) any significant changes to the Corporation's auditing and accounting principles and practices suggested by the Independent Auditors, internal audit personnel or management; and

(vii) management's internal control report prepared in accordance with rules promulgated by the SEC pursuant to Section 404 of the Sarbanes-Oxley Act.

(j) The Committee shall recommend to the Board whether the annual audited financial statements should be included in the Corporation's Form 10-K.

(k) The Committee shall review earnings press releases and discuss with management the Corporation's practices regarding such press releases and the provision of financial information and earnings guidance by management to analysts and rating agencies.

(l) The Committee shall periodically review and discuss with management the Corporation's guidelines and policies with respect to the process by which the Corporation undertakes risk assessment and risk management, including discussion of the Corporation's significant risk exposures, which include financial and information security risks, and the steps management has taken to monitor and control such exposures.

(m) The Committee shall prepare the Report required by Item 407 of Regulation S-K promulgated under the Exchange Act for inclusion in the Corporation's Proxy Statement for the Annual Meeting of Stockholders.

(n) The Committee shall review and discuss with the CEO and CFO the procedures undertaken in connection with the CEO and CFO certifications for Form 10-Ks and Form 10-Qs, including their evaluation of the Corporation's disclosure controls and procedures and internal control over financial reporting. . . .

(r) The Committee shall review with management and the Independent Auditors any correspondence with regulators or governmental agencies and any employee complaints or published reports that raise material issues regarding the Corporation's financial statements or accounting policies.

(s) The Committee shall review with the Corporation's general counsel any legal matters that may have a material impact on the financial statements or the compliance policies of the Corporation and its subsidiaries, and any material reports or inquiries received by the Corporation or any of its subsidiaries from regulators or governmental agencies. . . .

(v) The Committee shall exercise such other powers and perform such other duties and responsibilities as are incidental to the purposes, duties and responsibilities specified herein and as may from time to time be delegated to the Committee by the Board.

## SUBSTANTIVE ALLEGATIONS

***Background***

55. Graphic Packaging is a consumer packaging company that, together with its subsidiaries, designs, produces, and sells consumer packaging containers such as cartons, multipack cartons, trays, carriers, paperboard canisters, cups, and bowls which are primarily made from recycled paperboard, unbleached paperboard, and bleached paperboard. Graphic Packaging operates across twenty countries worldwide, serving a variety of consumer markets including food and beverage, foodservice, household products, beauty, and healthcare.

56. Graphic Packaging markets its products mostly to multinational consumer products companies including, but not limited to: Anheuser-Busch Inbev, MillerCoors LLC, PepsiCo, Inc., The Coca-Cola Company, The Kraft Heinz Company, General Mills, Inc., Nestlé USA, Inc., Mars, Inc., Ferrero Group, Kimberly-Clark Corporation, Chick-fil-A, McDonald's, Wendy's, Panda Express, Dairy Queen, Chipotle, Panera, KFC, GlaxoSmithKline, Bayer, Johnson & Johnson, Abbott, Novartis, L'Oréal S.A., Procter & Gamble, and Colgate-Palmolive. The Company also sells some paperboard in the open market to independent and integrated paperboard packaging producers. Sales of the Company's products are accomplished through sales offices across twelve countries and through broker arrangements with third parties.

57. Prior to the Relevant Period, the Company increased its inventory above normal levels as its customers began well-publicized "destocking" efforts (i.e., diminishing their own inventories) following COVID-19 pandemic-era excess procurement. Around this time, as customer demand declined, Graphic Packaging's net sales declined. Defendant Doss represented during this period, and up to the Relevant Period, that this demand imbalance was a short-term problem that the Company was actively managing. Nevertheless, by the end of 2024, the Company was experiencing weakening demand across multiple end markets and pressures from inflation

and reduced consumer spending on the Company's customers' products.

58. Throughout the Relevant Period, the Company and its representatives emphasized that Graphic Packaging's business model and operations were both stable and strong. The Company touted its ability to deliver on its cost and inventory reduction, its FCF, and its profitability goals despite the significant market headwinds challenging the Company's and its customers' businesses. However, in reality, the Company faced significant macroeconomic and structural issues that negatively impacted the Company's ability to deliver on its financial guidance, among other things.

***Individual Defendants' Materially False and Misleading Statements***

59. On February 24, 2025, the Company issued the 4Q24 Press Release. The 4Q24 Press Release provided the Company's full year 2025 financial guidance, stating, in relevant part:

> The Company currently expects 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS, excluding foreign exchange impact, of $8.7 billion to $8.9 billion, $1.68 billion to $1.78 billion, and $2.53 to $2.78, respectively. At current forward rates, the company estimates current foreign exchange headwinds to Net Sales, Adjusted EBITDA, and Adjusted EPS, of approximately $120 million, $20 million, and $0.05, respectively. Including the current foreign exchange headwind, expected 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS are $8.6 billion to $8.8 billion, $1.66 billion to $1.76 billion, and $2.48 to $2.73, respectively.

60. The 4Q24 Press Release also quoted Defendant Doss, who spoke on the strength and sustainability of the Company's operations and business model, emphasizing its consistency, profitability, and stability despite well-known macroeconomic headwinds, stating, in relevant part:

> In 2024, ***we demonstrated the value of the Graphic Packaging business model***, generating ***a level of consistency and profitability*** in line with other leading consumer packaging companies. We delivered ***strong and steady margins*** and ***significant new consumer packaging innovations***. Our strategic investments in capabilities, innovation, and competitive advantage ***have positioned the company for long-term value creation. In 2025, we will build on that success, driving competitive advantage in recycled paperboard across all of North America, and expanding our innovation capabilities into new markets and new product***

> ***categories around the world***.[2]

61. In the 4Q24 Press Release, Defendant Doss was also quoted downplaying the problems affecting the Company's industry, such as volume challenges, while touting Graphic Packaging's ability to overcome these same challenges, stating, in relevant part:

> The past two years have presented unusual volume challenges for the industry and our customers. ***Customer destocking is largely over***, but consumers are stretched and searching for value in their everyday purchases. Across grocery, convenience, e-commerce and mass retail, ***Graphic Packaging is responding to our customers' evolving needs by creating the more circular, more functional, and more convenient packaging that consumers prefer***. As the last of our major asset investments comes to completion in 2025, ***capital spending will decline significantly, and we will deploy excess cash to create substantial value for our stockholders***.

62. On the same day, the Company held an earnings call for analysts and investors to discuss its results for the fourth quarter and full year fiscal year 2024 (the "4Q24 Earnings Call"). During the 4Q24 Earnings Call, Defendant Doss insisted that the Company's business model and operations would allow Graphic Packaging to meet its goals in the upcoming year despite headwinds, stating, in relevant part:

> In 2024, ***we demonstrated the strength of our business model***, ***delivering strong and steady margins and challenging market conditions. We are well-positioned for 2025*** and to meet our Vision 30 aspirations in the years ahead. . . .
>
> When I became CEO back in 2016, our business which was about half the size, far less balanced than it is today, wasn't capable of generating ***the consistency that we now deliver.***
>
> ***Our team has done an outstanding job executing at a high level*** to build a consumer packaging business ***capable of generating strong and steady margins and cash flows across a variety of market environments***.
>
> 2024 saw a clear consumer focus on finding value, significant growth in private label and more consumers shopping for groceries at club and superstores. Our portfolio ***which is designed to move with the consumer responded well to those trends***. We introduced new packaging innovations in all categories with significant

---

[2] Unless otherwise stated, all emphasis is added.

> new product innovations for our private label customers across the U.S. and Canada and Europe.

63. During the 4Q24 Earnings Call, Defendant Scherger reiterated the strength of the Company's organization and business model and its ability to deliver on its financial guidance, stating, in relevant part:

> Despite a broad-based customer and retailer destocking and consumers under pressure from inflation, both of which reduced our volumes, ***we are generating appropriate value for the packages we deliver and that is translating into strong and steady margins***. . . .
>
> Given the volume challenges our customers are facing, ***the bottom of our 2025 adjusted EBITDA range assumes the year not very different from the one we just ended***. Even at that level, margins would be in the 19% range, which again speaks to the ***strength of the business model***.

64. During the question-and-answer portion of the 4Q24 Earnings Call, after an analyst asked a question about whether the increase in the Company's inventory levels since 2018 was intentional, Defendant Doss responded that the increase was an intentional right-size for demand, stating, in relevant part:

> ***Yes, you[r] read is good***. . . . [I]n some cases, we did have inventories that were a bit depleted coming out of the rush through the pandemic, if you will. And so ***our customers wanted us to get those back to the traffic levels, which we've done***.
>
> The biggest impact on a year-over-year basis to give some of the planning we're already doing to get ready for the Waco start up as you can appreciate, we've got a couple of paperboard manufacturing facilities that we need to take down and what we need to start up. So, ***we have to make sure we protect our customers during that process***.
>
> ***You'll see that wash through pretty quickly as Waco comes online, we expect to harvest that working capital. It's something we've got an [eye on], we want to normalize our paperboard and the levels that we have***. But when you're going through a startup like that, ***you've got to make sure that you cover for some of the contingencies, that's what we're doing***.

65. When asked about whether the Company's inventories were balanced and where the Company wanted them to be, Defendant Doss reiterated the intentionality and health of the

Company's inventory levels, stating, in relevant part:

> ***Yes***. So, as I kind of mentioned there . . . ***we had some rebuilding we needed to do with our finished goods coming through the pandemic. We've done that. We have to be able to service our customers in a highly variable market***. We feel about where we're at. Our on-time delivery is very high, and we're servicing them very well.
>
> As I mentioned, ***we made a decision to build a little bit of paperboard inventory*** here as we prepare for start of Waco paperboard mill, but as I mentioned earlier in my comments, ***that will wash [through] pretty quickly as we bring that mill up and running***.
>
> So, ***by and large, we like where we're at with our finished goods. . . . [I]t's a balance to make sure that we're able to respond to customer needs in a highly variable market***.

66. On February 12, 2025, the Company filed its annual report on Form 10-K with the SEC reporting its financial results for the period ended December 31, 2024 (the "2024 10-K"). The 2024 10-K was signed by Defendants Aghili, Brlas, Callahan, Doss, Hagemann, Martens, Rhinehart, Scarborough, Venturelli, and Wentworth. Attached as exhibits to the 2024 10-K were certifications pursuant to the Sarbanes-Oxley Act ("SOX") signed by Defendants Doss and Scherger attesting to the accuracy of the 2024 10-K.

67. The 2024 10-K touted the Company's ability to align its customer needs and tailor its operations accordingly, stating, in relevant part:

> ***Graphic Packaging works closely with its customers to understand their needs and goals*** and to create new and innovative designs customized to their specific needs. The Company's approach serves to build and strengthen long-term relationships with purchasing, brand management, marketing, and other key customer functions. ***The Company is organized to bring the full resources of its global and local innovation, design, and manufacturing capabilities to all of its customers with the goal of delivering packaging solutions that are more circular, more functional, and more convenient***.

68. On April 9, 2025, the Company filed a revised proxy statement on Schedule 14A with the SEC (the "2025 Proxy"). The 2025 Proxy assured investors that the Company was

sufficiently overseeing the risks to the Company, and that the Company had sufficient internal controls in place, stating, in relevant part:

> As set forth in the Company's Corporate Governance Guidelines, the Board is responsible for reviewing, approving and monitoring business strategies and financial performance, and ensuring processes are in place for maintaining the integrity of the Company in financial reporting, legal and ethical compliance matters, and in relationships with customers, suppliers, employees, the community and stockholders. The Board fulfills these responsibilities through a number of different practices, including the approval of each annual operating plan and long-term strategic plan, the review of actual results against such plans at each regular Board meeting, and specific review and approval of significant corporate actions such as acquisitions and divestitures, plant rationalizations and major projects involving significant capital spending. In addition, the Board oversees areas of particular risk through its Audit Committee, Compensation and Management Development Committee and Nominating and Corporate Governance Committee, each of which provides a report to the full Board of Directors at each regular Board meeting.
>
> **Audit Committee**[3]
>
> The Audit Committee has oversight responsibility for the quality and integrity of the Company's financial statements, the performance of the Company's internal audit function and the Company's compliance with legal and regulatory requirements. To fulfill these responsibilities, the Audit Committee routinely discusses and evaluates (i) audit findings and issues with the Company's Chief Financial Officer and independent auditors, (ii) internal controls, processes and issues with the Company's Senior Vice President and Chief Audit Risk and Compliance Officer (who reports directly to the Chairman of the Audit Committee and the Chief Financial Officer), (iii) legal and regulatory compliance issues with the Company's Executive Vice President, General Counsel and Secretary, and (iv) the status of the Company's information security and controls with the Company's Chief Information Officer. The Committee also periodically reviews and evaluates the Company's policies with respect to risk assessment and risk management, including discussion of the Company's major financial risk exposures and the steps that management has taken to monitor and control such exposures. The Board has also delegated to the Audit Committee oversight responsibility for the Company's information security, controls and reporting. In addition to these activities, the Audit Committee reviews each of the Company's Annual Report on Form 10-K and its Quarterly Reports on Form 10-Q and has the opportunity to discuss such reports with management of the Company and the Company's independent auditors prior to the filing of such reports with the SEC.

[3] Emphasis in original.

69. The above statements in ¶¶ 59-68 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose to investors, *inter alia*, that: (i) the Company's business model and operations were not as strong or sustainable as was stated; (ii) the Company, its business model, and its operations were unable to weather the ongoing macroeconomic headwinds affecting the Company; (iii) the Company was experiencing significant inventory management issues; (iv) Graphic Packaging experienced significantly reduced demand and volumes as well as increased costs throughout the Relevant Period; (v) accordingly, the Company's full year 2025 financial guidance was unreliable and/or unrealistic; (vi) the Company failed to maintain adequate internal controls and risk oversight mechanisms; and (vii) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and lacked a reasonable basis.

***The Truth Begins to Emerge***

70. The truth began to emerge on May 1, 2025, when the Company issued the 1Q25 Press Release, which reported disappointing financial results for the Company's first quarter. The 1Q25 Press Release reported, among other things, that first quarter non-GAAP EPS was $0.51, missing consensus estimates by $0.07, and that revenue was $2.12 billion, missing consensus estimates by $10 million and representing a 6.2% year-over-year decline. The 1Q25 Press Release also stated that the Company had negatively revised its previously issued fiscal year 2025 net sales outlook, adjusted EBITDA outlook, and adjusted EPS outlook to $8.2 to $8.5 billion, $1.4 to $1.6 billion, and $1.75 to $2.25, respectively, significantly down from the previously reported net sales outlook, adjusted EBITDA outlook, and adjusted EPS outlook of $8.7 to $8.9 billion, $1.68 to $1.78 billion, and $2.53 to $2.78, respectively.

71. Moreover, in the 1Q25 Press Release, the Company blamed its revised guidance on "an expectation of a 2% volume decline and $80 million of input cost inflation at the midpoint," in addition to "higher macroeconomic and consumer spending uncertainty."

72. On this news, the Company's stock price fell $3.94, or approximately 16%, from a closing price of $25.31 per share on April 30, 2025, to a closing price of $21.37 per share on May 1, 2025.

73. The Company's partial disclosures surprised analysts. Bloomberg reported that "Graphic Packaging shares plunge[d] as much as 16%, the most intraday since October 2018, after the company cut its adjusted [EBIDTA] guidance for the full year," with a "diminished outlook [that] missed the average analyst estimate." Similarly, RTT News reported that Graphic Packaging's stock price had "touched a new 52-week low of $21.16, with volume surging to 8.39 million shares, well above the average of 2.73 million."

74. Nevertheless, despite these partial disclosures, the Individual Defendants continued to make false and misleading statements. For example, the 1Q25 Press Release quoted Defendant Doss, who downplayed the ongoing issues with the Company's volume levels, costs, and cash generation, stating, in relevant part:

> [W]e saw a small volume decline in the Americas business, but continued improvement in our International business. Leveraging our growing cost and quality advantage and the strength of our innovation portfolio, we continue to gain market position as we partner with customers in a rapidly changing market.
>
> We saw an uptick in input cost inflation during the quarter, and responded with a price increase intended to bring margins back to a more normal range. With our Waco, Texas recycled paperboard investment nearing completion, our capital spending needs decline substantially . . . . We expect to return substantial cash to stockholders in the months and years ahead through a growing dividend and share repurchase.

75. On the same day, the Company held an earnings call for analysts and investors to

discuss its results for the first quarter of fiscal year 2025 (the "1Q25 Earnings Call"). During the 1Q25 Earnings Call, Defendant Doss continued to downplay the reduced demands, volumes, and increased costs the Company was experiencing, stating that "[w]hile these challenges won't be resolved overnight, ***neither are they long-term in nature***." Defendant Doss also indicated that the Company "***ha[s] taken actions to offset higher costs and continue to generate innovation sales growth*** that is helping us grow faster than the end markets we serve." He further stated that "[d]espite ***near-term challenges***, ***we remain well-positioned to generate substantial cash flow in the quarters and years ahead***."

76. During the question-and-answer portion of the 1Q25 Earnings Call, when answering a question on volumes and consumer affordability, Defendant Doss touted the Company's ability to manage inventory levels and meet demand, stating, in relevant part:

> [A]s we look at the full year [2025] and how we want to operate the business, while we can't control our volumes, ***what we can control is our cash flow***. And we want ***to run our business really to demand and making sure that we're running to the requirements that we see in front of us***.
>
> ***That'll eliminate some of the inventory*** . . . .

77. Defendant Scherger also reiterated the Company's focus on meeting demand, stating that "[w]e're going to run to demand this year. We'll be matching supply and demand. We will be taking inventory out of the business. . . . And then the aggressively matching supply and demand for the remainder of the year. . . ."

78. On the same day, the Company filed its quarterly report on Form 10-Q with the SEC, reporting its financial results for the period ended March 31, 2025 (the "1Q25 10-Q"). The 1Q25 10-Q was signed by Defendant Scherger and contained certifications pursuant to SOX signed by Defendants Doss and Scherger attesting to the accuracy of the 1Q25 10-Q.

79. The 1Q25 10-Q contained the same statement referenced in the 2024 10-K as

identified in ¶ 67 wherein the Company emphasized its ability to align its customer needs and tailor its operations accordingly.

80. On July 29, 2025, the Company issued a press release announcing its results for the second quarter of fiscal year 2025 (the "2Q25 Press Release"). In the 2Q25 Press Release, the Company positively revised its bottom range of its full year 2025 guidance that it had previously lowered in the 1Q25 Press Release. In the 2Q25 Press Release, the Company projected net sales of at least $8.4 billion (up from prior guidance bottom of $8.2 billion), adjusted EBITDA of at least $1.45 billion (up from prior guidance bottom of $1.4 billion), and adjusted EPS of at least $1.90 (up from prior guidance bottom of $1.75). The Company justified this increase by citing "actual first half performance and a . . . modest increase in second half revenue expectations."

81. The 2Q25 Press Release also quoted Defendant Doss, who spoke on the Company's renewed emphasis on volume growth and strategy to closely work with customers, stating, in relevant part:

> Promotional activity drove ***modestly better than expected volumes*** in the second quarter. Conversations with our customers ***suggest potential for increased emphasis on volume growth*** and protecting share in the year ahead. As these customers refine their strategies, ***we are working closely with them to support their plans***.

82. On the same day, the Company held an earnings call for analysts and investors to discuss its results for the second quarter of fiscal year 2025 (the "2Q25 Earnings Call"). During the 2Q25 Earnings Call, Defendant Doss spoke on the decision to address the Company's inventory levels, stating that "[o]ur decision to curtail production to further reduce inventory levels . . . ***positions us to operate much closer to normal levels in the second half***."

83. Defendant Scherger also touted the Company's inventory strategy and stated that the second quarter "is our biggest maintenance quarter, and ***we took aggressive action to manage***

***inventories, which . . . positions us to run at more normal levels in the second half***." Defendant Scherger further stated that "we expect second half adjusted EBITDA margins to be meaningfully better than first half ***as a result of actions we have taken to reduce inventories***. . . ."

84. During the question-and-answer portion of the 2Q25 Earnings Call, in response to a question about whether the Company could maintain sustainability into 2026 and beyond, Defendant Scherger stated, in relevant part:

> Q2 was very high for planned maintenance and less market-related downtime as ***we took over 50,000 tons of inventory out of the company in the first half that doesn't need to be repeated in the second half***. So 2 major components to the $100 million price and performance being $25 million and $60 million cumulatively. The remaining $15 million is a cross-section of some other inflation [foreign exchange] items, so relatively modest. . . .
>
> [W]e're ***very pleased with our inventory reduction efforts through – from December through June***. There'll be more inventory coming out of the company naturally in the second half of the year . . . ***but the economic impact of that is relatively modest as we sell aggressively out of inventory***.

85. In response to an analyst's question about Graphic Packaging's customers' demand, Defendant Doss stated, in relevant part:

> ***[O]ur volume [is] obviously quite good this year***. . . . I can tell you ***we're busy. We're steady. The demand is strong. We've gotten no indications from them that it's going to back off before the normal occurrence***. . . .

86. Also on July 29, 2025, the Company filed its quarterly report on Form 10-Q with the SEC reporting its financial results for the period ended June 30, 2025 (the "2Q25 10-Q"). The 2Q25 10-Q was signed by Defendant Scherger and contained certifications pursuant to SOX signed by Defendants Doss and Scherger attesting to the accuracy of the 2Q25 10-Q.

87. The 2Q25 10-Q contained the same statement referenced in the 2024 10-K as identified in ¶ 67 wherein the Company emphasized its ability to align its customer needs and tailor its operations accordingly.

88. On October 9, 2025, the Company filed a Current Report on Form 8-K with the SEC disclosing that Defendant Scherger was resigning from his position as EVP and CFO effective November 7, 2025.

89. On November 4, 2025, the Company issued a press release announcing its third quarter results for fiscal year 2025 (the "3Q25 Press Release"). The 3Q25 Press Release again modified the Company's financial outlook for 2025, stating, in relevant part:

> The Company currently expects full-year 2025 Net Sales, Adjusted EBITDA, and Adjusted EPS, including foreign exchange impact, of $8.4 billion to $8.6 billion, $1.40 billion to $1.45 billion, and $1.80 to $2.00, respectively. Revisions from prior guidance reflect year-to-date performance, further action to match production to orders (~$15 million), and a wider than normal range of potential fourth quarter outcomes. Volume and market uncertainty remain unusually high given a stretched consumer and weakened consumer confidence.

90. The 3Q25 Press Release also quoted Defendant Doss who lauded the Company's performance and business model, stating, in relevant part:

> Against a backdrop of sluggish consumer volumes, ***we executed well in the quarter, reduced inventory, and saw our innovation engine open new markets for paperboard packaging. As food affordability challenges ease, the full power of our business model and its cash generating potential will become even more apparent***.

91. On the same day, the Company held an earnings call for analysts and investors to discuss its third quarter results for fiscal year 2025 (the "3Q25 Earnings Call"). During the 3Q25 Earnings Call, Defendant Doss touted the Company's ability to reduce inventory and downplayed any concerns with costs and inventory, stating, in relevant part:

> ***We executed well in the quarter, made progress on costs and reduced inventory***.
> . . .
>
> In this environment, ***we are focused on the things we can control, and that includes cost and inventory***. We are assessing opportunities to further reduce SG&A ***and finding other opportunities to reduce costs, which I believe will further cement our significant efficiency and margin advantage over competitors***.

> ***You saw us take action to reduce inventory in the second and third quarters, and we will continue to drive inventory out of our system*** . . . . ***In the fourth quarter, we will take further action to balance production with customer demand, which we expect to have approximately a $15 million impact on EBITDA***. These decisions are intended to protect our margin profile and to protect our volume. At a time when competitors are running for cash and signing contracts that we believe carry margins well below the cost of capital, we are focused on protecting our industry-leading margins and protecting share where ***we are the best and most logical supplier in the medium and long term***.
>
> ***We are using this period of unusual competitive behavior to align our order books with customers*** who understand the durable competitive advantages that we have in innovation, cost, efficiency and quality. Our year-end leverage target is up modestly.

92. During the question-and-answer portion of the 3Q25 Earnings Call, in response to an analyst's question about the Company's ability to improve its productivity, Defendant Doss stated that the Company has "***a unique perspective to be able to look at our overall system, look at our supply chains, take a step back and really make sure that we're challenging kind of where we're at and what we can do. So those are the levers that we really have in our control***." Defendant Doss further added that the Company could "manage [its] supply and demand on [its] coated recycled paperboard. . . . ***We're able to do that and we're able to do it cost effectively***."

93. Also on November 4, 2025, the Company filed its quarterly report on Form 10-Q with the SEC, reporting its financial results for the period ended September 30, 2025 (the "3Q25 10-Q"). The 3Q25 10-Q was signed by Defendant Scherger and contained certifications pursuant to SOX signed by Defendants Doss and Scherger attesting to the accuracy of the 3Q25 10-Q.

94. The 3Q25 10-Q contained the same statement referenced in the 2024 10-K as identified in ¶ 67 wherein the Company emphasized its ability to align its customer needs and tailor its operations accordingly.

95. The above statements in ¶¶ 74-94 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.

Specifically, the Individual Defendants failed to disclose to investors, *inter alia*, that: (i) the Company's business model and operations were not as strong or sustainable as was stated; (ii) the Company, its business model, and its operations were unable to weather the ongoing macroeconomic headwinds affecting the Company; (iii) the Company was experiencing significant inventory management issues; (iv) Graphic Packaging experienced significantly reduced demand and volumes as well as increased costs throughout the Relevant Period; (v) accordingly, the Company's full year 2025 financial guidance was unreliable and/or unrealistic; (vi) the Company failed to maintain adequate internal controls and risk oversight mechanisms; and (vii) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and lacked a reasonable basis.

***The Truth Fully Emerges***

96. The truth continued to emerge on December 8, 2025, when the Company issued a press release titled "Graphic Packaging Implements Cost and Production Optimization Initiatives" (the "December Press Release"). In the December Press Release, the Company announced that it was accelerating certain inventory reduction plans earlier than projected, and that it would incur increased costs because of this change in course. Specifically, the December Press Release stated, in relevant part:

> [T]he Company plans to accelerate certain inventory reduction plans into the fourth quarter that were originally planned for 2026. Production curtailment is expected to impact fourth quarter operating results by $15 million, which is in addition to the $15 million relating to curtailments announced during the third quarter earnings call.

97. The December Press Release also disclosed that the Company had again negatively revised its full year 2025 financial guidance, specifically for its adjusted EBITDA and adjusted EPS, stating that "[a]djusted EBITDA is now expected to be in the range of $1.38 billion to $1.43

billion (from $1.40 billion to $1.45 billion). Adjusted EPS is expected to be in the range of $1.75 to $1.95 (from $1.80 to $2.00)."

98. On the same day, the Company filed a Current Report on Form 8-K with the SEC abruptly announcing that Defendant Doss would depart from the Company in under a month, effective January 1, 2026, and that the Board had "appointed [Defendant] Rietbroek to the position of CEO, effective January 1, 2026. The Board is also expected to appoint [Defendant] Rietbroek as a member of the Board on January 1, 2026, when [Defendant] Rietbroek commences employment with the Company."

99. Analysts reacted negatively to these disclosures. For example, as reported in Bloomberg, shortly after markets opened the following morning, Graphic Packaging's stock price had already fallen by more than 8% (the most in seven months) with trading volume spiking to more than seventeen times the twenty-day average. Analysts from Jefferies and Raymond James, among others, also commented on the "unexpected" departure of Defendant Doss.

100. On this news, the Company's stock price fell $1.35 per share, or approximately 9%, from a closing price of $15.58 per share on December 8, 2025, to a closing price of $14.23 per share on December 9, 2025.

101. The truth fully emerged two months later on February 3, 2026, when the Company issued the 4Q25 Press Release. Among other things, the 4Q25 Press Release reported that the Company's fourth quarter non-GAAP EPS was $0.29, missing consensus estimates by $0.06. The Company stated that these disappointing results stemmed from lower volumes, increased costs, and inventory reduction, stating, in relevant part:

> Fourth quarter EBITDA decreased 19% to $305 million, versus $376 million in the same quarter last year. Excluding the impact of business combinations and other non-recurring and special items, Adjusted EBITDA was $311 million versus $404 million in the same quarter last year. ***The $93 million decline in Adjusted EBITDA***

> ***was driven primarily by the impact of lower packaging price and volume, commodity and non-commodity costs, and negative Net Performance as a result of decisions taken to curtail production to reduce inventory***, partially offset by an $8 million favorable foreign exchange impact.

102. The 4Q25 Press Release also revealed that the Company was projecting a decline in adjusted EBITDA in 2026, citing a $130 million negative impact from inventory reduction and actions taken to generate FCF, stating, in relevant part:

> The Company currently expects . . . Adjusted EBITDA . . . of . . . $1.05 billion to $1.25 billion. . . . ***The decline in expected Adjusted EBITDA reflects a $130 million negative impact from actions taken to reduce inventory and generate free cash flow, an approximately $100 million accrual (non-cash in 2026) for a return to more normal incentive compensation, January weather and production impacts, and other largely offsetting operating items***.

103. The 4Q25 Press Release also quoted Defendant Rietbroek, who spoke on the need to review the Company's organization, structure, and operations, confirming the weakness and unsustainability of Graphic Packaging's business model and operations up to that point, stating, in relevant part:

> ***Consumer affordability created a challenging market for our customers and competitive pressure remains a near-term headwind***. As we move into 2026, our priorities are clear: drive operational excellence; deliver exceptional customer service; ***improve our cost structure***; and drive substantial free cash flow to strengthen the balance sheet and return capital to shareholders. ***I have initiated a comprehensive review of our organization structure, operations, and footprint***, and a selective review of our portfolio to ensure that our resources are focused where we can create the greatest value for our shareholders.

104. On this news, the Company's stock price fell $2.36, or approximately 16%, from a closing price of $14.78 per share on February 2, 2026, to a closing price of $12.42 per share on February 3, 2026.

105. Analysts reacted negatively to these revelations. For example, Jefferies wrote that "the quarter & outlook is disappointing and reflects a more competitive backdrop & structural headwinds than appreciated," and stated that Graphic Packaging "will likely be in the penalty box

for some time," citing their "negative net performance due to production curtailment to reduce inventory." Similarly, Raymond James wrote that Graphic Packaging's "4Q25 result is completely overshadowed by a **disappointing 2026 guide and longer-term FF outlook**," noting the "$130M impact form actions to reduce inventory[.]"[4] RBC Capital Markets noted that the Company's "FY26 Guide [was] Significantly Below-Street" expectations and issued a "Negative" sentiment on the Company. UBS Global Research characterized the Company's "2026 EBITDA [guidance as] significantly below consensus ($1.15B vs $1.4B)," citing the related "inventory reduction." Wells Fargo wrote that "[w]hile we previously looked past near-term challenges toward 2026 FCF strength, the abrupt CEO change with no industry experience, a vacant CFO seat, and softening fundamentals shift our view," with "[r]epeated EBITDA guidance cuts and mounting competitive pressure in boxboard further weigh[ing] on confident in [Company] targets; thus, we assign an [underweight] rating."

***Insider Sales***

106. During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Martens sold shares of the Company's common stock while in possession of non-public information concerning the Company's financial condition and business prospects.

107. While the Company's stock price was artificially inflated, Defendant Martens sold 63,752 shares of Graphic Packaging common stock, totaling proceeds of approximately $1.4 million. Defendant Martens made the following sales of Graphic Packaging stock during the Relevant Period:

[4] Emphasis in original.

| Transaction Date | Number of Shares Sold | Average Price Per Share | Total Transaction |
|---|---|---|---|
| August 1, 2025 | 56,737 | $21.84 | $1,239,136 |
| August 4, 2025 | 7,015 | $21.80 | $152,927 |

108. As a result of these insider sales, Defendant Martens was unjustly enriched.

***Share Repurchases***

109. According to the Company's public filings, while the price of Graphic Packaging stock was artificially inflated due to the false and misleading statements detailed above, the Individual Defendants caused the Company to repurchase 6,765,249 shares of its own stock in 2025 at an average share price of $22.17 per share for a total of approximately $150 million.

110. Given that the price of Graphic Packaging stock was $12.42 per share after the final corrective disclosures on February 3, 2026, the true value of the 6,765,249 repurchased shares was roughly $84 million. Accordingly, the Individual Defendants caused the Company to overpay by approximately $66 million to repurchase these shares of its own stock during the Relevant Period.

***Harm to the Company***

111. As a direct and proximate result of the Individual Defendants' misconduct, Graphic Packaging has lost and expended, and will lose and expend, millions of dollars.

112. Such expenditures include, but are not limited to, the legal fees associated with the Securities Class Action filed against the Company and Defendants Doss and Scherger, and amounts paid to outside lawyers, accountants, and investigators in connection therewith.

113. Such expenditures also include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

114. Furthermore, the Securities Class Action has exposed the Company to massive class-wide liability.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

115. Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

116. Graphic Packaging is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

117. Plaintiff is a current shareholder of Graphic Packaging and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of Graphic Packaging in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

118. A pre-suit demand on the Board of Graphic Packaging is futile and, therefore, excused. At the time this action was commenced, the nine-person Board consisted of Individual Defendants Aghili, Brlas, Callahan, Hagemann, Maselli, Rietbroek, Venturelli, and Wentworth (the "Director Defendants") and non-party Jeffrey M. Stafeil ("Stafeil," and together with the Director Defendants, the "Directors"). Accordingly, Plaintiff is only required to show that five Directors cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action. As set forth below, all of the Directors are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action because they face a substantial likelihood of liability for the misconduct alleged herein. Therefore, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act.

119. The Director Defendants either knew or should have known of the false and

misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

120. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

121. Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

122. As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of Graphic Packaging, the Director Defendants knew, or should have known, the material facts surrounding Graphic Packaging's financial condition and internal control mechanisms.

123. Defendant Rietbroek is not disinterested or independent. In addition to serving as a director, Defendant Rietbroek also serves as the Company's President and CEO. Thus, as conceded in the Company's 2026 Proxy, Defendant Rietbroek is a non-independent director. Accordingly, demand upon Defendant Rietbroek is futile, and thus excused.

124. Moreover, Director Defendants Aghili, Brlas, Callahan, Hagemann, Maselli, Venturelli, and Wentworth each solicited the materially false and misleading 2025 Proxy.

125. Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

126. Moreover, the Director Defendants willfully ignored, or recklessly failed to inform themselves of, the obvious problems with the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

127. Defendants Hagemann, Brlas, and Aghili (the "Audit Defendants") serve on the Company's Audit Committee, and pursuant to the Audit Committee Charter, are specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, financial reporting and the underlying internal controls and procedures over financial reporting. At all relevant times, however, the Audit Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of the issuance of material misstatements and omissions regarding the Company's business, finances, and operations, as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

128. The Director Defendants, as members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Director Defendants to also adhere to the Company's standards of business conduct. The Director Defendants violated the

Code of Conduct because they knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. Because the Director Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

129. All of the Board's current members derive substantial revenue from the Company, control the Company, and are indebted to each other. These conflicts of interest have precluded the Board's current members from calling into question the Director Defendants' conduct.

130. Moreover, none of the Directors have taken remedial action to redress the conduct alleged herein.

131. The Directors' conduct described herein and summarized above could not have been the product of legitimate business judgement as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter. As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein. They cannot be presumed to be capable of exercising independent and disinterested judgement about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

132. The acts complained of herein constitute violations of fiduciary duties owed by Graphic Packaging's officers and directors, and these acts are incapable of ratification.

133. Thus, for all the reasons set forth above, the Director Defendants are unable to consider a demand with the requisite disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

**COUNT I**
**Against the Individual Defendants for Violations of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R. § 240.14a-9)**

134. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

135. The Individual Defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder by the SEC.

136. Section 14(a) of the Exchange Act provides that:

> It shall be unlawful for any person, by use of the mails or by means of instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 781].

15 U.S.C. § 78n(a).

137. Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

138. The Individual Defendants, individually and in concert, disseminated and/or permitted the dissemination of materially false and misleading statements in the 2025 Proxy, which was filed with the SEC. As alleged above, the 2025 Proxy was materially false and misleading because it failed to disclose, *inter alia*, that the Board and management were not properly overseeing risks to the Company, namely risks related to the Company's inventory management and operations.

139. The misrepresentations and omissions in the 2025 Proxy were material to Company stockholders. Specifically, the misrepresentations and omissions were material to Company stockholders in voting on matters set forth for shareholder determination in the 2025 Proxy, including, but not limited to, the reelection of certain of the Individual Defendants to the Board. Specifically, the materially false and misleading statements contained in the 2025 Proxy misleadingly induced shareholders to vote for the reelection of Individual Defendants Brlas, Hagemann, and Maselli to the Board, thereby allowing them to continue breaching their fiduciary duties to the Company.

140. As a result of the Individual Defendants' material misrepresentations and omissions in the 2025 Proxy, the Company has sustained significant damages.

141. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT II**
**Against the Individual Defendants for Violations of § 10(b) of the Exchange Act (15 U.S.C. § 78(j)) and Rule 10b-5 (17 C.F.R. § 240.10b-5)**

142. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

143. The Individual Defendants participated in a scheme with the purpose and effect of defrauding Graphic Packaging. Not only is Graphic Packaging now defending claims that it violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, but the Company itself is also one of the largest victims of the unlawful scheme perpetrated upon Graphic Packaging by the Individual Defendants.

144. During the Relevant Period, while the price of the Company's stock was artificially inflated as a result of the false and misleading statements issued, the Individual Defendants caused the Company to overpay by approximately $66 million to repurchase 6,765,249 shares of Graphic

Packaging common stock.

145. The Individual Defendants also individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct designed to falsify the Company's press releases, public statements, and periodic and current reports filed with the SEC.

146. The Individual Defendants employed devices, schemes, and artifices to defraud while in possession of adverse, material, non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Graphic Packaging not misleading.

147. The Individual Defendants, as directors and officers of the Company, are liable as direct participants in the wrongs complained of herein. Through their positions of control and authority as directors and officers of the Company, the Individual Defendants were able to, and did, control the conduct complained of herein and the content of the public statements disseminated by Graphic Packaging.

148. The Individual Defendants acted with scienter during the Relevant Period, in that they either had actual knowledge of the scheme and the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them. The Individual Defendants were the top executives of the Company, or received direct briefings from them, and were therefore directly responsible for the scheme set forth herein and for the false and misleading statements and/or omissions disseminated to the public through filings with the SEC.

149. The Individual Defendants, through their violation of Section 10(b) of the

Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, have caused the Company to expend approximately $150 million in the repurchase of Graphic Packaging stock at artificially inflated prices and have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

150. By virtue of the foregoing, the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

151. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT III**
**Against the Individual Defendants for**
**Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a))**

152. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

153. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act. By virtue of their positions of control within the Company, the Individual Defendants had the authority to cause the Company to issue materially false and misleading statements, and to repurchase Graphic Packaging stock at prices artificially inflated by those materially false and misleading statements.

154. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT IV**
**Against the Individual Defendants**
**For Breach of Fiduciary Duty**

155. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

156. The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation

of good faith, fair dealing, loyalty, and due care.

157. Each of the Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, good faith, oversight, and supervision.

158. The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, and otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

159. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (i) the Company's business model and operations were not as strong or sustainable as was stated; (ii) the Company, its business model, and its operations were unable to weather the ongoing macroeconomic headwinds affecting the Company; (iii) the Company was experiencing significant inventory management issues; (iv) Graphic Packaging experienced significantly reduced demand and volumes as well as increased costs throughout the Relevant Period; (v) accordingly, the Company's full year 2025 financial guidance was unreliable and/or unrealistic; (vi) the Company failed to maintain adequate internal controls and risk oversight mechanisms; and (vii) as a result of the foregoing, the Company's public statements regarding its business, operations, and prospects were materially false and misleading and lacked a reasonable

basis.

160. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

161. In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and omissions of material fact referenced herein.

162. Furthermore, one of the Individual Defendants engaged in insider sales during the Relevant Period while the price of the Company's stock was artificially inflated, netting millions of dollars in proceeds for himself.

163. As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

164. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

165. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT V**
**Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty**

166. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

167. By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

168. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT VI**
**Against the Individual Defendants for Unjust Enrichment**

169. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

170. By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Graphic Packaging.

171. The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Graphic Packaging that was tied to the performance or artificially inflated valuation of Graphic Packaging, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

172. Plaintiff, as a shareholder and a representative of Graphic Packaging, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits,

benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

173. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

**COUNT VII**
**Against the Individual Defendants for Waste of Corporate Assets**

174. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

175. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

176. As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; (ii) causing the Company to repurchase millions of shares of its own common stock at artificially inflated prices; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending against the Securities Class Action.

177. As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

178. Plaintiff, on behalf Graphic Packaging, has no adequate remedy at law.

**COUNT VIII**
**Against Individual Defendants Doss and Scherger for Contribution Under Section 10(b) and 21D of the Exchange Act**

179. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

180. The Company and Individual Defendants Doss and Scherger are named as defendants in the Securities Class Action, which asserts claims under federal securities laws for

violations of Section 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole, or in part, due to the Individual Defendants Doss' and/or Scherger's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

181. Defendants Doss and Scherger, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

182. Accordingly, Defendants Doss and Scherger are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)) which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

183. As such, the Company is entitled to receive all appropriate contribution or indemnification from Defendants Doss and Scherger.

184. Plaintiff, on behalf of Graphic Packaging, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A. Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B. Directing all Individual Defendants to account for all damages caused by them and

all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C. Directing Graphic Packaging to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;
- strengthening the Company's internal reporting and financial disclosure controls;
- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and
- strengthening the Board's internal operational control functions;

D. Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated: August 14, 2026

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Gina M. Serra
Vincent A. Licata
Leah B. Wihtelin
Zachary McGarry
225 Broadway, Suite 3707
New York, NY 10007
Telephone: (212) 201-7690
Email: gms@rl-legal.com
Email: vl@rl-legal.com
Email: lw@rl-legal.com
Email: zm@rl-legal.com

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com